NOT FOR PUBLICATION                       (Docket Entry Nos. 13, 16)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                   :
HARRY HESELPOTH and                :
EVELYN HESELPOTH, h/w,             :
                                   :
           Plaintiffs,             :   Civil No. 03-4624 (RBK)
                                   :
      v.                           :   **OPINION**
                                   :
RENEE E. CAVILEER,                 :
                                   :
           Defendant.              :
_____:


**KUGLER**, United States District Judge:

In this diversity action, plaintiffs Harry Heselpoth ("Harry") and Evelyn Heselpoth ("Evelyn") assert negligence claims against defendant Renee E. Cavileer arising out of the parties' October 2001 car accident.  Cavileer counterclaims against Harry for contribution pursuant to N.J.S.A. § 2A:15-5.3(e).[1]  This matter now comes before the Court upon Harry's motion for summary judgment on Cavileer's counterclaim.  Cavileer joins in Harry's argument and requests summary judgment in her

---

[1] Section 2A:15-5.3(e) provides: "Any party who is compelled to pay more than his percentage share may seek contribution from the other joint tortfeasors."  Thus, the statutes entitles Cavileer to recover from Harry if she pays more than her percentage share for Evelyn's losses.

1

favor as to Evelyn's claims.  For the reasons expressed in this opinion, Harry's motion for summary judgment on the counterclaim will be granted in part as to Evelyn's claims for noneconomic loss and denied in part as to Evelyn's claims for economic loss. Cavileer's request for summary judgment on Evelyn's claims will be identically granted in part and denied in part.

I.      **UNDISPUTED FACTS**

On October 1, 2001, Harry was driving his car east on White Horse Pike in Egg Harbor, New Jersey, approaching the intersection of Philadelphia Avenue.  Evelyn was a passenger in Harry's car.  When Cavileer, who was driving west on White Horse Pike, made a left turn onto Philadelphia Avenue, the two cars collided.

Following the accident, Evelyn was treated at Kessler Memorial Hospital, where she complained of pain in her left shoulder, left wrist, and back.  At the hospital, Evelyn was diagnosed with cervical strain, a contusion of her left ribs, and a nondisplaced fracture of her left wrist.  She was prescribed Tylenol for pain and left the hospital the same day.  Evelyn now claims that she suffered a "frozen left shoulder" as a result of the October 1, 2001 accident.

On October 3, 2001, Evelyn was treated by Dr. Paul Steinfield.  Dr. Steinfield noted that Evelyn "denies upper

extremity pain except for the wrist."

Evelyn received periodic physical therapy treatment at the office of Dr. William Burstein, her primary care physician, following the accident.  Dr. Burstein's office notes of October 12, 2001 reported that Evelyn suffered a "left rotator cuff tear 5 years ago."

On October 18, 2001, Evelyn was treated by Dr. Sea Hun Kim.  Dr. Kim observed "signs and symptoms of an old left rotator cuff injury" at that time.  Evelyn visited Dr. Kim a second time on November 15, 2001.  Dr. Kim again observed a "resolved left rotator cuff injury (old)," noting that "[t]he pain in the left shoulder has resolved."

On July 8, 2003, Dr. Burstein noted that Evelyn complained: (1) of decreased range of motion in her left shoulder since the accident, and (2) that she could not put her left arm behind her back or straigten it up.

In her answers to interrogatories, dated August 24, 2004, Evelyn described her symptoms:

> I continue to have soreness in my left
> shoulder . . . to the present.  I have this
> pain on a daily basis.  Some days are worse
> than others depending on my level of
> activity.  I cannot straighten my left arm
> completely, cannot raise it above my head,
> and cannot put my left arm behind my back.  I
> use a heating pad for the pain and take
> [T]ylenol on occasion.

(Pl.'s Answers to Interrogs. ¶ 3.)  Evelyn elaborated on the

3

previous injury to her left shoulder:

> Approximately five years before the accident of 10/01/2001, I fell in my home. I tripped over a vacuum cord and landed on my left arm and shoulder. I never treated with anyone for this injury just took care of it myself at home using a heating pad. It was sore for approximately a month. The pain and soreness resolved, however I was never able to fully extend my left arm. This condition has been greatly aggravated by the accident of 10/01/01.

(Pl.'s Answers to Interrogs. ¶ 9.)

Dr. Ronald Greene examined Evelyn on August 30, 2004. Dr. Greene reported that Evelyn suffered from "adhesive capsulitis of the left shoulder, otherwise known as frozen left shoulder." He stated that he had "no opinion about the cause of the frozen left shoulder except to say that it clearly has no relationship to the accident of 10/1/01."

Dr. Norman Stempler examined Evelyn on September 28, 2004. Dr. Stempler opined that, "within a reasonable degree of medical probability," Evelyn's left shoulder injury was "permanent, has not healed to function normally and will not heal to function normally with further medical treatment." Dr. Stempler continued: "In my professional opinion, within a reasonable degree of medical certainty, there is a direct causal relationship between all of the patient's ongoing and continued left shoulder girdle symptoms and the incident related."

In her sworn affidavit dated December 3, 2004, Evelyn

4

denied that she had an old left rotator cuff injury.  (Evelyn Heselpoth Aff. ¶ 12.)

At the time of the accident, Harry and Evelyn were residents of Pennsylvania and held liability insurance through Allstate Insurance Company ("Allstate").  Allstate was and is authorized to conduct business in New Jersey.

## II.       ANALYSIS

### A.       SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Celotex, 477 U.S. at 330.  The moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an

5

essential element of the nonmoving party's case.  <u>Id.</u> at 331.

### B. NEW JERSEY'S LIMITATION ON LAWSUIT THRESHOLD

New Jersey's "deemer statute," N.J.S.A. § 17:28-1.4, deems New Jersey's "limitation on lawsuit threshold," N.J.S.A. § 39:6A-8(a), to apply to an out-of-state resident and his immediate family members where (1) the out-of-state resident uses and operates a car in New Jersey, and (2) the out-of-state resident is insured by an insurance company authorized to do business in New Jersey.  In this case, Harry and Evelyn are residents of Pennsylvania.  Allstate Insurance Company, Harry's insurer, is authorized to do business in New Jersey.  Evelyn, as Harry's wife, is Harry's "immediate family member."  The car accident took place in New Jersey.  Therefore, Evelyn is subject to New Jersey's limitation on lawsuit threshold.

Under the limitation on lawsuit threshold, N.J.S.A. § 39:6A-8(a), a plaintiff cannot recover in tort for noneconomic loss unless her injuries cross a "verbal threshold," which includes "a permanent injury within a reasonable degree of medical probability."  Section 39:6A-8(a) also requires a plaintiff to provide the defendant with a physician's certification stating, under penalty of perjury, that the plaintiff has sustained an injury described in subsection (a) "within 60 days following the date of the answer to the complaint by the defendant."  Thus, Evelyn cannot recover here for her

noneconomic injuries unless (1) she has suffered "permanent injury within a reasonable degree of medical probability"; and (2) she provided Cavileer with a physician's certification.

Claiming that Evelyn has not satisfied the requirements of § 39:6A-8(a), Harry moves for summary judgment on Cavileer's counterclaim for contribution on three grounds. First, Harry argues that Evelyn did not timely submit a physician's certification. Second, Harry argues that Evelyn has not demonstrated a "serious permanent injury." Third, Harry argues that Evelyn has not demonstrated a "serious lifestyle impact."

In <u>DiProspero v. Penn</u>, 2005 WL 1388402, at *17 (June 14, 2005), the Supreme Court of New Jersey held that section 39:6A-8(a) "does not contain a serious life impact standard." Therefore, Harry's third argument fails.

In <u>Serrano v. Serrano</u>, 2005 WL 1388483, at *1 (June 14, 2005), the Supreme Court of New Jersey held that a plaintiff need not demonstrate a "serious" injury to establish "permanent injury" under the meaning of § 39:6A-8(a). Therefore, Harry is not entitled to summary judgment on the ground that Evelyn has not demonstrated a "serious" injury. However, <u>Serrano</u> does not end the inquiry as to Harry's second argument, which also contains an assertion that Evelyn has not proved a "permanent" injury arising out of the accident.

Evelyn argues that her "frozen left shoulder"

7

constitutes "permanent injury."  Harry contends that he is entitled to summary judgment because "no doctor contrasted Evelyn's medical records as to her left arm before the accident with those following the accident," and therefore that Evelyn's evidence is insufficient to establish permanent injury under New Jersey law.

To satisfy the verbal threshold, "[comparative] analysis is required to differentiate a subsequent injury to a body part that was previously injured whether aggravation of the prior injury is alleged or not."  See Bennett v. Lugo, 368 N.J. Super. 466, 473 (App. Div.), cert. denied, 180 N.J. 457 (2004). This "comparative analysis" consists of "an evaluation of the medical records of the patient prior to the trauma with the objective medical evidence existent post-trauma."  See id. at 472.  Without a comparative analysis differentiating pre-existing injury from that caused by the accident out of which her claims arise, a plaintiff cannot overcome the verbal threshold.  See id.

The records of Dr. Burnstein and Dr. Kim both note that Evelyn had suffered a left rotator cuff tear prior to the car accident with Cavileer.  In response, Evelyn submits in her sworn affidavit:

> I understand that my medical records indicate
> that I had a rotator cuff tear in my left
> shoulder about five years before the
> accident.  That is absolutely not true.
> Furthermore, I never said to any medical
> provider that I had a rotator cuff tear,

8

because I did <u>not</u> have one.

(Evelyn Heselpoth Aff. ¶ 12.)  However, the self-diagnosis contained in Evelyn's affidavit is not the "credible, objective medical evidence" necessary to establish satisfaction of the verbal threshold.  <u>See</u> <u>Oswin v. Shaw</u>, 129 N.J. 290, 314 (1992), <u>superseded on other grounds by</u> N.J.S.A. § 39:6A-8.  Further, in her interrogatory answers, Evelyn contends that her previous left shoulder injury had been "greatly aggravated by the accident of 10/01/01."  (Pl.'s Answers to Interrogs. ¶ 9.)  Thus, it is clear that Evelyn cannot overcome the verbal threshold without producing a comparative analysis of her injuries.

Dr. Stempler's report shows that Evelyn told him of the prior injury to her left shoulder.  Although Dr. Stempler opined that Evelyn's frozen left shoulder was caused by the October 2001 car accident, his report does not indicate that this opinion was based on a comparison of Evelyn's pre-accident medical records with her post-accident medical records.  There is no comparative analysis elsewhere in the record.

Because Evelyn has therefore produced insufficient evidence of satisfaction of the verbal threshold, she cannot recover for her noneconomic damages.  Therefore, Harry's motion for summary judgment on the counterclaim will be granted in part as to Evelyn's claims for noneconomic loss.  For the same reason, Cavileer's request for summary judgment will be granted in part

as to Evelyn's claims for noneconomic loss.

"'Noneconomic loss' means pain, suffering, and inconvenience." N.J.S.A. § 39:6A-2(i). However, Evelyn also asserts claims for economic loss. See, e.g., Compl. ¶ 20 (alleging that Evelyn "has incurred and in the future will incur expenses for the treatment of her injuries"); see also N.J.S.A. § 39:6A-2(k) ("'Economic loss' means uncompensated loss of income or property, including, but not limited to, medical expenses."). Because Evelyn's failure to satisfy the verbal threshold does not affect her claims for economic loss, Harry's motion for summary judgment on the counterclaim will be denied in part as to Evelyn's claims for economic loss. For the same reason, Cavileer's request for summary judgment will be denied in part as to Evelyn's claims for noneconomic loss.

Having decided the motion on the verbal threshold issue, this Court need not reach Harry's argument as to whether Evelyn's submission of a physician's certification was timely and adequate.

**III.     CONCLUSION**

Harry's motion for summary judgment on the counterclaim will be granted in part as to Evelyn's noneconomic losses, and denied in part as to Evelyn's economic losses. Cavileer's request for summary judgment on Evelyn's claims will be granted

10

in part as to Evelyn's noneconomic losses, and denied in part as to Evelyn's economic losses.[2] The accompanying Order shall issue today.

Dated:     June 22, 2004            /s/ Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge

---

[2] Because neither party raised any objection in the briefs, summary judgment is granted in part even though (1) Cavileer's "request" for summary judgment was not made by formal motion; and (2) none of the exhibits submitted by the parties have been authenticated through sworn affidavit or certification. In issuing this opinion, this Court does not condone those practices.